UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tariq M. Debardeleben,                                  Case No. 1:21-cv-988

            Petitioner,

      v.                                                             MEMORANDUM OPINION
                                                                AND ORDER

Harold May, Warden,

            Respondent.

## I. INTRODUCTION

Petitioner Tariq M. Debardeleben[1] filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, concerning his conviction in the Cuyahoga County, Ohio Court of Common Pleas on charges of murder, reckless homicide, felonious assault, and endangering children. (Doc. No. 1). Magistrate Judge Jonathan D. Greenberg reviewed the petition as well as the related briefing pursuant to Local Rule 72.2(b)(2) and recommends I deny the petition. (Doc. No. 11). Debardeleben filed objections to Judge Greenberg's Report and Recommendation. (Doc. No. 13). For the reasons stated below, I overrule Debardeleben's objections and adopt Judge Greenberg's Report and Recommendation.

---

[1] Debardeleben currently is incarcerated at the Mansfield Correctional Institution, where Harold May currently is the Warden. I order that May be substituted as the Respondent in this case. Fed. R. Civ. P. 25(d); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

## II. BACKGROUND

On September 21, 2017, Debardeleben was charged by a Cuyahoga County grand jury with one count of aggravated murder, two counts of murder, one count of felonious assault, and three counts of endangering children. These charges arose from the August 26, 2017 death of a 15-month old girl, Morgan Dillard, that Debardeleben helped to babysit.

The Court of Appeals of Ohio, Eighth District, summarized the facts presented at trial as follows:

> Nineteen-year-old Debardeleben resided in an apartment with his girlfriend of several years, Aleia Beard ("Beard"), and cousins Romell Carey ("Romell") and Reginald Carey ("Reginald"). Debardeleben was employed and had no criminal record.
>
> Debardeleben and Beard often babysat at their apartment for the children of friends and family members. M. Dillard spent the weekend with them several times previously without incident. On Friday, August 25, 2017, M. Dillard's great aunt Cheryl Dillard ("C. Dillard") and cousin Robert Conway, Jr. ("Conway") babysat for M. Dillard during the day and testified that M. Dillard was in good spirits and health and did not fall or have bruises or bumps. Great grandmother Victoria Dillard ("V. Dillard") and Shamika Howard ("Howard"), M. Dillard's paternal grandmother, took M. Dillard to a football game that evening and dropped her off at the apartment with Debardeleben and Beard about 10:30 p.m. to spend the weekend. Debardeleben and Beard were babysitting for several nieces and nephews ranging in age from one to six years old when M. Dillard arrived.
>
> V. Dillard and Howard testified that M. Dillard was happy and healthy that day. Beard stated that M. Dillard, who was usually happy and playful, was coughing, whining, and not feeling well.
>
> Beard and the children awakened about 7:00 a.m. the next morning. M. Dillard was still coughing and irritable, but Beard did not observe any marks or bruises on M. Dillard's body. Beard left for work about 8:00 a.m. while the children remained with Debardeleben. At approximately 9:50 a.m., Debardeleben called Beard and told her that he was going to call the police because M. Dillard passed out while he was dressing her after her bath. Beard met the family at the hospital. M. Dillard had blood around her mouth and was on life support.
>
> Warrensville Heights police officers Thomas Schanz ("Officer Schanz") and Terrence Sullivan ("Officer Sullivan") responded to the EMS request for assistance with a suspected child drowning. Debardeleben told Officer Schanz and Officer Sullivan that he was bathing M. Dillard and left her alone in the bathtub for a few minutes to see why the other children were yelling and screaming. M. Dillard was

still sitting in the tub when he returned. Debardeleben was drying and dressing M. Dillard when her body became limp.

Debardeleben threw water on M. Dillard, called her name, and attempted to administer mouth-to-mouth resuscitation. He also called to cousins Romell and Reginald for assistance. Reginald, a nursing assistant, attempted resuscitation while Debardeleben called 911.

Statements were taken from Debardeleben, Romell, and Reginald and police were given permission to look around the apartment and take photographs. Some of the photographs depicted feces on the edge of the bathtub and in the bath water. Debardeleben, Romell, and Reginald were arrested at the apartment. M. Dillard was placed on life support upon arrival at the hospital and was pronounced dead later that morning.

The coroner determined that that M. Dillard's death was a homicide caused by blunt impact injuries and bleeding.

*State v. Debardeleben*, 2020-Ohio-661, 2020 WL 948432, at *1-2 (Ohio Ct. App. Feb. 27, 2020); *see also* (Doc. No. 11 at 2-6).

After a jury trial, Debardeleben was found guilty of the lesser-included offense of reckless homicide,[2] and of the two counts of murder, one count of felonious assault, and three counts of endangering children. *State v. Debardeleben*, 2020 WL 948432, at *2. The convictions merged for purposes of sentencing and the trial court sentenced Debardeleben to a term of 15 years to life in prison.

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Debardeleben must demonstrate, by clear and convincing evidence, that the state court's factual findings were incorrect. *Id. See also Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'") (quoting 28 U.S.C. § 2254(e)(1)).

---

[2] This offense was a lesser-included offense of aggravated murder, a charge on which he was found not guilty.

3

Debardeleben has not done so. Debardeleben does not dispute that M. Dillard was dropped off at his home or that she died after having been in his care but asserts "[n]early all other material facts . . . were in dispute." (Doc. No. 13 at 2). It is unclear whether this reference is intended to be directed at the trial itself or as an objection to Judge Greenberg's discussion of the factual and procedural history of this case. But, to the extent Debardeleben objects to that section of the Report and Recommendation, his objection falls short, as he has not identified any evidence, much less clear and convincing evidence, that demonstrates the state court's factual findings were not correct. Therefore, I adopt those sections of the Report and Recommendation in full. (Doc. No. 11 at 2-6).

### III.    STANDARD

Once a magistrate judge has filed a report and recommendation, a party to the litigation may "serve and file written objections" to the magistrate judge's proposed findings and recommendations, within 14 days of being served with a copy. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Written objections "provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately' . . . [and] 'to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute.'" *Kelly v. Withrow*, 25 F.3d 363, 365 (6th Cir. 1994) (quoting U*nited States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981) and *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). A district court must conduct a *de novo* review only of the portions of the magistrate judge's findings and recommendations to which a party has made a specific objection. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

### IV.    DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits the issuance of a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

Debardeleben asserts the following grounds for relief:

**Ground One**: *Brady* violation resulting in the deprivations of constitutionally guaranteed due process rights.

**Ground Two**: Prosecutorial misconduct in violation of Petitioner's due process rights.

**Ground Three**: Admission of unfairly prejudicial victim-impact evidence resulted in violation of Petitioner's due process rights.

**Ground Four**: The conviction was based on legally insufficient evidence which resulted in a violation of Petitioner's right to due process.

(Doc. No. 1 at 5-10).

### A.    GROUND ONE

In Ground One, Debardeleben asserts his due process rights were violated when the prosecution failed to notify him of a statement Officer Sullivan testified that Debardeleben made after officers arrived at his residence. (Doc. No. 1 at 5). Judge Greenberg recommends I deny this ground for relief because it lacks merit.

Due process requires the government to disclose evidence favorable to a defendant "where the evidence is material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The *Brady* rule "encompasses impeachment evidence as well as exculpatory

evidence," as well as evidence known only to the police and not by prosecutors. *Strickler v. Green*, 527 U.S. 263, 280-81 (1999) (citations omitted).

During Debardeleben's trial, Officer Sullivan testified that Debardeleben stated he had discovered M. Dillard under the water in the bathtub when he returned to the bathroom after checking on the other children in the house. (Doc. No. 7-6 at 62, 70, 72). Officer Sullivan also testified this statement was in his report. (*Id.* at 85). While the prosecution did not disclose this alleged statement to the defense prior to trial, the Sixth Circuit has held that a delayed disclosure does not violate due process unless the defendant can show he suffered prejudice as a result of the delay. *McNeill v. Bagley*, 10 F.4th 588, 600 (6th Cir. 2021).

Judge Greenberg concluded Debardeleben failed to demonstrate he was prejudiced by the delayed disclosure because his trial counsel "thoroughly" impeached Sullivan regarding his inconsistent testimony. (Doc. No. 11 at 14); (*see also* Doc. No. 7-6 at 97-118). Debardeleben objects to this conclusion, arguing Sullivan's "unexpected testimony" allowed the prosecution to undermine Debardeleben's credibility. (Doc. No. 13 at 4). But Debardeleben fails to explain how this is so. After Sullivan testified he wrote down in his report "exactly" what Debardeleben told him when he arrived at the scene, trial counsel emphatically established that Sullivan's testimony was not true – that Sullivan did not in fact write down "exactly" what he now claimed Debardeleben said. (Doc. No. 7-6 at 88).

This line of testimony underlined Sullivan's credibility, not Debardeleben's. Debardeleben fails to show he was prejudiced by the delayed disclosure. Therefore, I overrule his objection and adopt Judge Greenberg's recommendation regarding Ground One.

### B. GROUND TWO

In Ground Two, Debardeleben contends the prosecution committed misconduct that violated his due process rights. He identified four instances in which he contends the prosecution

6

engaged in improper conduct in an attempt to discredit his expert witness: (1) on the prosecution's recross examination, the prosecutor commented that she didn't want to keep the defense expert from his "next baby death case," (Doc. No. 7-10 at 39); (2) the prosecution's comments about the defense expert's compensation in exchange for his testimony, (Doc. No. 7-9 at 218-19); and (3) the prosecution's contention the defense expert had created a "little boutique business . . . where [he] infer[s] things that happened that don't happen." (*Id.* at 244).

Judge Greenberg recommends I deny this ground as to the "baby death case" comment and dismiss the remainder of the ground as procedurally defaulted. (Doc. No. 11 at 14-19).

Debardeleben raised only the "baby death case" comment in his direct appeal. After the prosecutor made the comment, the trial judge sustained the defense objection and instructed the jury to disregard the prosecutor's "baby death case" comment. (Doc. No. 7-10 at 41). The state appellate court adopted the presumption that the jury followed the trial judge's instruction and concluded Debardeleben did not demonstrate there was a reasonable probability of a different outcome at trial but for the improper statements. *State v. Debardeleben*, 2020 WL 948432, at *6. Judge Greenberg concluded Debardeleben failed to show the state court's decision was contrary to, or involved an unreasonable application of, federal law, and he recommended I deny this portion of Ground Two. (Doc. No. 11 at 17).

Debardeleben objects to this conclusion, arguing the prosecutor's comment was an unfairly prejudicial and intentional attack on his expert witness's credibility. (Doc. No. 13 at 5-7). But Debardeleben has not pointed to any clearly established Supreme Court precedent that would establish the state appellate court's decision must be overturned. Therefore, I overrule his objection and deny Ground Two as to the prosecutor's "baby death case" comment.

7

Judge Greenberg notes that this comment was the only one Debardeleben raised in his state court proceedings and recommends I conclude Debardeleben's other proffered bases for relief are procedurally defaulted. (Doc. No. 11 at 17-18).

The procedural default rule bars a federal habeas petitioner's claims if (1) the state court declined to consider the merits of an issue because the habeas petitioner failed to comply with state procedural rules, or (2) if the petitioner failed to fully pursue a claim through the state's "'ordinary appellate review procedures'" and now no longer is able to raise the claim, unless the petitioner establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice would occur if the claim is not reviewed. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999)).

Debardeleben does not dispute that he did not raise any other comments constituting alleged prosecutorial misconduct. (*See* Doc. No. 14 at 6-7). A party's failure to object to a magistrate judge's recommendation constitutes waiver of that issue. *See Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) ("[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review"). Therefore, I conclude Debardeleben has waived any objection as to Judge Greenberg's procedural-default recommendation and I dismiss the remainder of Ground Two as procedurally defaulted.

C. **GROUND THREE**

In Ground Three, Debardeleben asserts the state's "use of victim-impact testimony to inflame the passions of jurors results in a due process violation." (Doc. No. 10 at 16). As he noted, the state appellate court rejected his victim-impact arguments on appeal. *State v. Debardeleben*, 2020 WL 948432, at *5. Judge Greenberg recommends I conclude this ground for relief is not cognizable in habeas corpus proceedings because it raises state-law issues regarding the admissibility of

8

evidence. (Doc. No. 11 at 21). He also recommends that, to the extent Debardeleben raises a due process claim, that I conclude that claim lacks merit. (*Id.* at 21-23).

Debardeleben did not object to Judge Greenberg's recommendations as to Ground Three. Therefore, I conclude he has waived objection and I adopt those recommendations.

### D. GROUND FOUR

Finally, in Ground Four, Debardeleben challenges the sufficiency of the evidence underlying his conviction. Judge Greenberg recommends I conclude this argument lacks merit and deny this ground for relief.

In a sufficiency-of-the-evidence claim, a defendant asserts his conviction violated his due-process rights because the evidence did not "reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "[E]vidence is sufficient to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (quoting *Jackson*, 443 U.S. at 319) (emphasis in *Jackson*). This "deferential" standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman*, 566 U.S. at 655 (quoting *Jackson*, 443 U.S. at 319).

Moreover, a habeas petitioner must show more than that "reasonable minds reviewing the record might disagree with the state court's factual determination . . . ." *Carter v. Bogan*, 900 F.3d 754, 768 (6th Cir. 2018). Section 2254(d)(2) "imposes a highly deferential standard" which requires that "the record must '*compel* the conclusion that the [state] court had no permissible alternative' but to arrive at the contrary conclusion." *Carter*, 900 F.3d at 768 (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)) (emphasis and alteration in *Rice*).

Debardeleben raised this argument on appeal from his conviction. The state appellate court reviewed Debardeleben's challenge and ultimately rejected it:

> Debardeleben admits that he had custody, care, and control of M. Dillard and testimony by Beard, Romell, and Reginald confirm that fact. Debardeleben provides no explanation for what happened to M. Dillard during the bath and has not indicated that he encountered any problems while bathing her, though M. Dillard's family members testified that M. Dillard was afraid of water and disliked baths. *See, e.g.*, testimony by V. Dillard, "[i]f we took a bath I would have to be in the tub with her, because you couldn't leave her in the tub by herself because she feared water." (Tr. 654.)
>
> Debardeleben said that, as he was bathing M. Dillard, he heard the other children screaming and left the 15-month-old child alone in the tub while he went to check on them. Debardeleben returned to find M. Dillard sitting in the tub. While he was drying and dressing M. Dillard, she suddenly became limp and unresponsive.
>
> Debardeleben was unable to wake M. Dillard and attempted resuscitation efforts that were continued by Reginald when he and Romell were summoned by Debardeleben for assistance. Debardeleben provided the same description of events to Beard, Romell, Reginald, and the police.
>
> Reginald testified that M. Dillard's skin had a blue tone when he arrived in the bathroom. Reginald confirmed the photographic evidence that feces were in the bath water and on the side of the tub.
>
> The defense forensic pathologist opined that the injuries were caused by improper resuscitation techniques. The medical examiner rejected the explanation and stated the bruises would have been in the chest or rib area and not on M. Dillard's face. The medical evidence did not support drowning and the medical examiner testified that M. Dillard died from severe blunt force trauma injuries administered close to the time of death.
>
> We point out that
>
>> [u]nlike direct evidence in which a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish, circumstantial evidence requires the drawing of inferences that are reasonably permitted by the evidence.
>
> *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13.
>
> "Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind." *State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37. The difference between circumstantial and direct evidence are

> irrelevant to the probative value as each carries the same weight. *Cassano* at ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 2001-Ohio-4, 739 N.E.2d 749. "The Ohio Supreme Court has 'long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *Id.*, citing *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990).
>
> Viewed in a light most favorable to the prosecution, we find that the evidence was sufficient to support the convictions in this case as a matter of law.

*State v. Debardeleben*, 2020 WL 948432 at *8-9.

Debardeleben objects to Judge Greenberg's recommendation that I deny his claim, arguing it was "objectively unreasonable" for the state appellate court to deny his appeal on this basis because "[t]he lead detective . . . immediately leapt to conclusions and failed to consider any alternative as his investigation progressed[, including] . . . concerning allegations surrounding M.D.'s maternal relatives . . . ." (Doc. No. 13 at 8).

But a sufficiency of the evidence claim is not designed to question the investigation that led up to a defendant's indictment and subsequent conviction. Instead, it asks whether "after viewing the evidence [presented at trial] in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Debardeleben fails to identify any error in the state appellate court's application of the *Jackson* standard. Therefore, I overrule his objection and deny this ground for relief because it lacks merit.

### E.    CERTIFICATE OF APPEALABILITY

A habeas corpus petitioner is not entitled to a certificate of appealability as a matter of right but must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner need not demonstrate he should prevail on the merits. Rather, a petitioner must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to

11

deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Debardeleben's petition has not met this standard.

For the reasons set forth in this decision, I certify there is no basis on which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

### V. CONCLUSION

For the reasons stated above, I overrule the objections of Petitioner Tariq M. Debardeleben, (Doc. No. 13), to Magistrate Judge Jonathan D. Greenberg's Report and Recommendation, (Doc. No. 11), and adopt the Report and Recommendation in full. I conclude Debardeleben's first ground for relief lacks merit, his second ground for relief lacks merit as to the "baby death case" comment and is procedurally defaulted as to the remaining identified comments, his third ground for relief is not cognizable in federal habeas proceedings, and his fourth ground for relief lacks merit. I deny Debardeleben's petition for habeas corpus relief.

I also conclude Debardeleben fails to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(b)(2), and decline to issue a certificate of appealability.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge